## CARLTON v. BOKEE.

1. Where a claim in a patent uses general terms of reference to the specification, such as "substantially in the manner and for the purpose herein set forth," although the patentee will not be held to the precise combination of all the parts described, yet his claim will be limited, by reference to the history of the art, to what was really first invented by him.

2. General claims inserted in a reissued patent will be carefully scrutinized, and will not be permitted to extend the rights of the patentee beyond what is shown by the history of the art to have been really his invention. If made to embrace more the claim will be void.

3. One void claim, if made by inadvertence and in good faith, will not vitiate the entire patent.

APPEAL from the Circuit Court for the District of Maryland.

William Carlton et al., as assignees of Christian Reichmann, filed their bill in equity in the court below to restrain Howard Bokee from infringing a patent for an improvement in lamps, granted to Reichmann on the 21st of September, 1858, and reissued to Carlton and one Merrill on the 11th of August, 1868.

The court below dismissed the bill, and the complainant took this appeal.

The case can be gathered from the facts stated in the opinion of the court.

*Messrs. J. H. B. Latrobe and B. R. Curtis, for the appellant; Messrs. C. F. Blake and C. M. Keller, contra.*

Mr. Justice BRADLEY stated the facts and delivered the opinion of the court.

The lamp, as patented to Reichmann, was one of a large

number of attempts made about the time to utilize petroleum and its various products for purposes of illumination. The old lamps adapted to sperm oil, lard, and other gross and sluggish oils were unfitted for the use of so volatile and dangerous a substance. In them the flame was set close to the lamp, and the tube holding the wick was projected downward into the oil, so that the heat of the flame might be communicated thereto in order to render it more fluid and susceptible to the capillary attraction of the wick. Such an arrangement as this with petroleum would have produced a speedy explosion. This article required that the flame should be elevated as far as possible above the lamp and that the metallic wick tube should not communicate any heat to the fluid. This was one object to be attained in the burners required for the use of the new illuminator. Another was some contrivance for concentrating a current of air upon the flame itself, so as to consume as perfectly as possible all the rapidly escaping volatile gases, both as a saving of light and as a preventive of the disagreeable odors which they would otherwise diffuse.

FIG. 1.

Reichmann's burner, illustrated in Figure 1, was intended to accomplish these main objects as well as some subsidiary ones, which will hereafter appear. It consisted of several distinct parts, combined and arranged in a particular manner. First, a flat

wick-tube (indicated in the figure by the letter *c*) attached to the cap or stopper of the lamp, and rising above the same one or two inches, more or less, according to the size of the burner, but not projecting into the lamp below. Secondly, ratchet-wheels attached to the side of the wick-tube on a small shaft (*g*), for raising and lowering the wick. Thirdly, a slide or sleeve (*i*) fitted to slip up and down over the wick-tube, and sufficiently tight to stay in any position thereon, and furnished with arms (*o, o*), two or more, for supporting above the wick-tube a dome or deflector (*m*). Fourthly, the dome aforesaid, having an oval or oblong slot for the flame to pass through, so that part of the flame might be above the dome and part below it. The object of this dome was to collect and concentrate the air upon the flame, in order to make it burn more brightly and consume the hydro-carbon and other gases which emanated from the petroleum. It also acted as a deflector of the light proceeding from the lower part of the flame, whereby it was thrown downward towards and around the lamp, whereas the light from that part of the flame above the dome was all thrown upward or horizontally about the room. Fifthly, around the periphery of the dome several narrow slips of the metal (*k*) were turned up, to act as arms or supports to the glass chimney of the lamp, and between these arms spaces were cut out of the edge of the dome, to allow air to pass up between the dome and chimney for the purpose of guiding the flame and feeding it with additional oxygen. Sixthly, the chimney itself (*p*), which was placed inside of and upon the said arms or supports, and held in its position thereby.

This was the combination of elements of which Reichmann's burner consisted, and it will be perceived that the chimney was so elevated that the flame of the lamp below the dome was exposed on every side, and a current of air or a rapid movement of the lamp would extinguish it. This. was the great defect of the burner, which prevented its introduction into general use, and rendered it of little value. The principal advantage which Reichmann in his patent claimed for it was that it allowed the light from the under side of

the deflector to be reflected or thrown downward upon the table or lamp. This was effected by the use of upright, slender arms to support the dome, so that the space around and underneath the dome was left open and uninclosed. He also claimed some less important advantages in his arrangement of the ratchet-wheels for raising the wick, and one or two other things of no importance in this controversy.

The patent had but one claim and that amounted to the general combination of elements referred to and their peculiar arrangement. It was in these words:

"What I claim as new and desire to secure by letters-patent is, in combination with the lamp, the slotted, open, bell-shaped cap (i. e., the dome), when so constructed, arranged, and operating as to allow light to be deflected downwards, substantially in the manner and for the purpose herein set forth and explained."

In order to understand how narrow this claim really was, it is necessary to know a little of the history of the art. Two well-known burners are conceded to have been in use before Reichmann's invention, which have a material bearing on his claims; the Vienna burner and Stuber's burner. These have been exhibited to us.

The Vienna burner, shown in Figure 2, contained the flat wick-tube, the ratchet-wheel attached thereto (but covered and not exposed as in Reichmann's), and a slotted dome above the wick for the flame to pass through, and a chimney; but the dome was not supported by slender arms, as in Reichmann's, but was connected with a gallery, which supported the chimney and surrounded the wick-tube and dome, and rested on the lamp or cap below, so that all the light of the flame below the dome was inclosed and lost and could not issue out as in Reichmann's burner. The drawing shows the dome (a), the surrounding gallery (b), and the lower part of the wick-tube (c).

The Stuber burner, invented by John Stuber in 1856, and made in considerable quantities in that and the following years at Utica, New York (shown in Figure 3), was an im-

FIG. 2.

FIG. 3.　　　　　　　　　　FIG. 4.

provement on the Vienna burner, in this, that the gallery was so low as to leave a considerable open space under the dome for the reflected light to pass out in a downward direction, and the dome was supported by slender arms (d), but these arms were attached to the gallery and not to a sleeve fitted on to the wick-tube. It differed, therefore, from Reichmann's in these respects: the chimney was supported on a low gallery instead of the dome itself, and the dome was supported by arms (d) attached to this gallery instead of arms attached to a sleeve on the wick-tube.* Therefore, with these burners before us, all the invention we can discover in Reichmann's burner is the peculiar mode of supporting his dome by slender arms attached to a sleeve fitted on to the wick-tube, and the elevation of the chimney on the outer edge of the dome. The latter peculiarity, as we have seen, is a defect which rendered the burner nearly useless.

The lamp made and sold by the defendants is substantially exhibited (in a sectional view) in Figure 5, which was patented to L. J. Atwood, October 13th, 1863. The dome and chimney are lifted from their place on the cap of the lamp to show the parts.

The allegation of the complainants that the defendant uses Reichmann's invention of peripheral springs (m) around the edge of the dome (h) for steadying his chimney we regard as fallacious. The transformation by a mere trick of words and vague generalities of the arms or supports used by Reichmann to sustain his chimney into peripheral springs may be ingenious, but it cannot stand the test of sober consideration. It is not pretended that Reichmann produced anything more than the arms or supports shown in his original patent, marked k in Figure 1. These were mere slips of

---

* The Figure 4 shows another form of Stuber's invention. In Figure 3 upright strips of metal embrace the exterior of the chimney so as to make it stand steadily. In Figure 4 an ornamented crown-piece with large openings, reducing the quantity of metal embracing the chimney to not greatly more than what is in the "upright strips of metal," seen in Figure 3, performs the same functions that the last do in the burner illustrated by the said Figure 3. —REP.

metal turned up around the edge of the dome, such as had been in common use for a great period of time. All that Reichmann did new in this regard was to elevate his chimney on the top of the dome. This, in fact, rendered his lamp in the main useless, and the defendant does not copy it, but slips his chimney down around the dome and places it on a platform perforated with holes, which rests upon the cap of the lamp and answers to the bottom or floor of Stuber's gallery. He thus surrounds the flame with the chimney below as well as above the dome and prevents it from being extinguished by drafts of air without obstructing the issue of the light from below the dome. In this respect his lamp is more like Stuber's than Reichmann's. It is true that he keeps his chimney from coming in contact with the dome by surrounding the latter with a fine spiral spring or metallic fringe ($m$), but this has no resemblance or analogy to the supporting arms appended by Reichmann to his dome.

The question whether the defendant's burner, which is called the Comet, contains the other peculiarity of Reichmann's burner, namely, the supporting of the dome by slender arms attached directly to a sleeve fitted snugly upon the wick-tube, admits of more discussion. The dome was supported by slender arms both in Stuber's and Reichmann's lamps, but in the former the arms were attached to the surrounding gallery on which the chimney rested, and which was slipped over a raised portion of the base ($f$) to which the wick-tube was affixed and there held in place by a bayonet fastening, whilst in Reichmann's burner the arms were attached to a sleeve, fitted directly upon the wick-tube so snugly as to support the dome and chimney firmly and steadily, as before described. Now, in the Comet burner of the defendant, the arms supporting the dome ($k$), Figure 5, are attached to the platform before mentioned, which answers the place of the gallery floor in Stuber's burner, and the central portion of which is perforated with an opening or slot ($i$) so as to pass down over the wick-tube when being placed on the lamp; around this slot or opening the platform is raised next to the wick-tube in a conical form ($g$), so

that the top edge of the raised part touches the wick-tube, and thus helps to give steadiness to the dome and chimney. The arms are attached to this raised part. But this raised portion of the platform is very far from being Reichmann's sleeve, which was a peculiar characteristic in his lamp, and the sleeve arrangement was all that Reichmann pretended to have produced. Its generalization in the reissued patent is simply effected by a dexterous use of words and vague generalities. We are constrained to hold, therefore, that the Comet burner is not an infringement of Reichmann's original patent or of the invention which is exhibited in his original specification.

It is proper next to inquire as to the bearing of the reissued patent on the question in litigation between the parties. The defences made by the defendant against this reissue are, first, that it was obtained illegally, wrongfully, and by false pretences, and because it seeks to claim things of which Reichmann was not the original and first inventor; secondly, that the original patent itself was void, be-

Fig. 5.

cause the only thing in it which Reichmann had any pretence of inventing was anticipated by a man by the name of Michael Collins, as early as 1843.

The specification of the reissued patent describes the burner of Reichmann substantially as was done in the original patent, being interspersed, however, with observations as to the uses and objects of particular parts, evidently borrowed from subsequent experience and events. The single claim of the original patent is expanded into seven distinct claims. The first three of these claims, taken with the qualifications which they contain, and limited as they must be by the state of the art at the time when the original patent was applied for, amount to precisely the same thing and to no more than the one claim of the original patent. The first is for a combination of only two elements, it is true, the flat wick-tube and the dome, which combination is found in both the Vienna and Stuber burners; but a qualification is added, that the combination is to be " under the *arrangement* substantially as shown and described, so that, *while directly con nected with each other*, the said parts shall allow light to pass out or be reflected from between them, as set forth." Thus it is made essential to the invention here claimed, not only that the two elements named should be present, but that they should have the arrangement described in the patent, and should have a direct connection with each other, and that the light should be reflected from between them. All these things exist in the Stuber burner except one. In that burner the wick-tube and the dome are not directly connected together. The dome is first connected with the gallery and the gallery with the wick-tube. So that the claim is reduced to the same thing which was claimed in the original patent. The same may be said of the second and third claims. If they mean anything more than the claim in the original patent they are void. Being identical with that they are needlessly multiplied, and by exhibiting a seeming of claims to which Reichmann was not entitled they are calculated to confuse and mislead. We think it proper to re-iterate our disapprobation of these ingenious attempts to

expand a simple invention of a distinct device into an all-embracing claim, calculated by its wide generalizations and ambiguous language to discourage further invention in the same department of industry and to cover antecedent inventions. Without deciding that a repetition of substantially the same claim in different words will vitiate a patent, we hold that where a specification by ambiguity and a needless multiplication of nebulous claims is calculated to deceive and mislead the public, the patent is void.

The fourth claim was clearly anticipated by the burner of Stuber. It is in the following words:

"A lamp-burner composed of two groups of elements, the first consisting of the base with its wick-tube and wick-adjusting rack and pinions; the second of a chimney-holder, deflector, and such other parts as may be needed for the proper combustion of the fluid so as to produce an illuminating flame, the two groups being united by friction, and the latter when in position in the burner being supported by the former without the intervention of any mechanical device whereby the two may be rigidly connected together, substantially as and for the purposes herein shown and set forth."

Everything here claimed is found in Stuber's burner. If this claim is valid Stuber could be enjoined. The addition of a bayonet fastening by Stuber does not destroy the identity of his lamp with the alleged invention described in this claim. It follows that this claim is void for this reason, without reference to other objections which have been suggested in relation to it. One void claim, however, does not vitiate the entire patent, if made by mistake or inadvertence and without any wilful default or intent to defraud or mislead the public. Giving to the complainants the whole benefit of this indulgence there is still nothing in the remaining claims which the defendant is called upon to answer. They are merely for combinations of parts in the original burner of Reichmann which the defendant does not use unless the pretence of a claim to peripheral springs as distinguished from Reichmann's arms and supports can be sustained. We have already seen that this cannot be done.

Our conclusion, therefore, is that the Comet burner is no infringement of Reichmann's reissued patent so far as that patent is valid.

This view of the case makes it unnecessary to discuss the question relating to the alleged invention of Collins. Whilst his conduct and testimony and that of the other witnesses who testify to his invention are susceptible of much criticism, we think it proper to say that we should feel great difficulty in disregarding it altogether. If the models presented by him were really his invention at the time sworn to, the Reichmann patent has no foundation whatever to stand on. But waiving the discussion of this question we feel bound to affirm the decree of the Circuit Court for the reasons above stated.

DECREE AFFIRMED.*

---

* This case was adjudged at the term before last, but owing to the Reporter's inability to procure drawings of the different burners spoken of in the opinion, and which, as to most of them, were exhibited to the court only by the production of the burners themselves, an earlier report has not been practicable.