COMBINED PATENTS CAN CO. *v.* LLOYD.*

(*Circuit Court, E. D. Pennsylvania.* February 4, 1882.)

PATENT—DUPLICATION OF CLAIMS—AGGREGATION OF WELL-KNOWN ELEMENTS.
 A patent contained two claims—the first for a can made of sheet metal, in which the top or bottom is joined to the sides by a double-recessed clamping lap-joint, substantially as described; the second for a similar can with the joint capable of being soldered by dipping. *Held,* that as it appeared from the specifications that the joint in the can described in the first claim was capable of being soldered by dipping, the second claim was included in the first, and therefore void. *Held, further,* that the first claim, interpreted with reference to the specifications, was for a mere aggregation of old and well-known elements, and was also void.

Hearing on Pleadings and Proofs.

Bill in equity to restrain infringement of reissued patent No. 7,682, for an improvement in sheet-metal cans. The answer denied infringement and alleged want of novelty. The facts are sufficiently stated in the opinion.

*Dickerson & Dickerson,* for complainant.

*Henry Baldwin, Jr.,* for respondent.

McKENNAN, C. J. This suit is founded on reissued letters patent No. 7,682, dated May 15, 1877, to Herman Miller, assignor of the complainant, for an improvement in sheet-metal cans. The original patent was dated June 23, 1863, and that is the earliest date to which the invention claimed is assigned.

The patent contains two claims, viz.:

"(1) A can or other vessel made of sheet metal, in which the top or bottom is joined to the sides by a double-recessed clamping lap-joint, substantially as described. (2) A can or other vessel made of sheet metal, in which the top or bottom is joined to the sides by a clamping lap-joint, which is capable of being soldered by dipping, substantially as described."

*Reported by Frank P. Prichard, Esq., of the Philadelphia bar.

Construing the first claim, as we think it ought to be, in connection with the directions given for the construction of the can in the body of the specifications, we are of opinion that the second claim is comprehended in the first, and is, therefore, a partial duplication of it. It claims a can with a double-recessed clamping lap-joint, which is capable of being soldered by dipping. The can referred to in the first claim has this capability, because it is directed to be constructed with the joint described, which is to be soldered by dipping. Of course, it is capable of being so soldered, and hence the second claim embraces only a quality or feature, which is covered by the first claim, as an inseparable incident to the can therein claimed as an entirety. We must, therefore, dismiss this claim from further consideration as void. *Carlton* v. *Bokee*, 17 Wall. 463.

Soldering the joint is a means of joining the top and bottom of the can to the sides, prescribed in the specification, and it must, therefore, be regarded as part of the structure covered by the first claim. That claim, then, interpreted with reference to the specification, is for "a can or other vessel made of sheet metal, in which the top or bottom is joined to the sides by a double-recessed clamping lap-joint," soldered by dipping.

Is this a new and patentable invention? All its constituents were old and well known at the date of the patent.

In the English patent to Emile Peltier, dated August 27, 1861, is described a double-recessed clamping lap-joint, of which that described in the patent in question is a counterpart. As cans or boxes embodying this joint were intended to hold gunpowder or other similar articles, the application of solder to it was not contemplated. But the use of solder to add stiffness and strength to metal joints, and to render them impervious to fluids, is immemorial. And in the English patents of Henrietta Brown and Walter Brown, dated in 1850 and 1855, respectively, the application of solder by bathing to metal joints, to render them fluid-tight, is directed and described, and is spoken of as having been before used.

The patentee has merely aggregated these elements in his can, without causing them to perform, by their united action, any function which they did not perform separately before. In other words, he has taken the Peltier joint, and rendered it fluid-tight by solder, applied by dipping the joint in a bath.

In the conception or material embodiment or operation of such a union of well-known elements, we cannot detect any patentable merit, and hence the bill must be dismissed, with costs.