JESSE J. MOORE, Respondent, v. EDWARD S. MADDOCK, Appellant.

(Argued April 15, 1929; decided July 11, 1929.)

*Frank H. Towsley* for appellant. . The cause of action, if any, set forth in the complaint is not one for fraud or deceit and the statutory rule that the cause of action begins to run from the time of discovery of the fraud does not apply. (*Rucker* v. *Hagar,* 230 Pac. Rep. 70; *Glover* v. *National Bank of Commerce of New York,* 156 App. Div. 247; *Price* v. *Mulford,* 107 N. Y. 303; *Model Building & Loan Assn.* v. *Reeves,* 114 Misc. Rep. 137; *Spallholz* v. *Sheldon,* 216 N. Y. 205; *Hart* v. *Goadby,* 129 N. Y. Supp. 892; *Oakes* v. *Howell,* 27 How. Pr. 145.) There can be no question under the New

York law but that the liability of the agent, if any, under a contract purporting to be made in the name of a principal is on the implied warranty of authority and is not on the contract itself. (*White* v. *Madison*, 26 N. Y. 117; *Baltzen* v. *Nicolay*, 53 N. Y. 467; *Dung* v. *Parker*, 52 N. Y. 494; *Simons* v. *Moore*, 100 N. Y. 140; *Taylor* v. *Nostrand*, 134 N. Y. 108.) The position of the defendant is that the cause of action, if any, is on the breach of the implied warranty of authority, that the warranty is broken when made, and that the cause of action accrued immediately. (*Allen* v. *Todd*, 6 Lans. 222; *Louisville Silo & Tank Co.* v. *Thweatt*, 295 S. W. Rep. 710; *Motley* v. *Montgomery*, 18 S. C. Law, 554; *Woodland Oil Co.* v. *Byers & Co.*, 223 Penn. St. 241; *Tremaine* v. *Canada Pressed Brick Co.*, 21 Ont. Wkly. Notes, 110; *Lehigh Coal & Nav. Co.* v. *Blakeslee*, 189 Penn. St. 13; *Boston Tow Boat Co.* v. *Medford Nat. Bank*, 121 N. E. Rep. 491; *Chancellor* v. *Wiggins*, 43 Ky. 201; *Blethen* v. *Lovering*, 58 Me. 437; *National Bank* v. *Spates*, 41 W. Va. 27; *Brackett* v. *Martens*, 87 Pac. Rep. 410; *Fairbanks, Morse & Co.* v. *Smith*, 99 S. W. Rep. 705.)

*A. Furman Greene* for respondent. The allegations of the amended complaint, as amplified by plaintiff's answering affidavit, justify the conclusion that defendant fraudulently concealed his lack of authority. The presence of the element of fraud prevents the operation of the Statute of Limitations until the discovery by plaintiff of the facts constituting fraud. (*Polhill* v. *Walter*, 3 B. & Ad. 114; *White* v. *Madison*, 26 N. Y. 117; *New Georgia Nat. Bank* v. *Lippmann*, 249 N. Y. 307; *Hopkins* v. *Lincoln Trust Co.*, 233 N. Y. 213.) Even conceding that defendant's liability rests upon his implied warranty of authority, the plaintiff's cause of action did not accrue the instant the representation of authority was made but not until plaintiff learned of defendant's lack of authority. (*Cherry* v. *Colonial Bank*, [1869] L. R. 3 P. C. 24; *Yonge* v.

*Toynbee,* [1910] 1 K. B. 215; *Letellier* v. *Boivin,* 16 Que. Super. Ct. 428; *Anderson* v. *Adams,* 43 Ore. 621; *Sheffield Corp.* v. *Barclay,* [1905] App. Cas. 392.)

LEHMAN, J. The complaint herein alleges that in August, 1921, the plaintiff was in the employ of the Continental Guaranty Corporation. The defendant was the president of the corporation. He represented to the plaintiff that he was authorized as president to act as agent and representative of the corporation, and on behalf of the corporation he entered into a contract with the plaintiff for the organization and promotion of a similar corporation to engage in the same line of business, either as a subsidiary of, or in co-operation with, the said Continental Guaranty Corporation, and agreed that in consideration of the services to be rendered by the plaintiff, the plaintiff should receive a large block of stock in the new corporation and a substantial payment in money. In pursuance of the agreement, and in reliance upon the defendant's representation that the defendant was duly authorized to act as the agent of the said Continental Guaranty Corporation in the making of the contract, the plaintiff rendered services as required by the contract. Subsequently the Continental Guaranty Corporation asserted that the defendant had no authority to act as agent for it, as president or otherwise, in the making of the above-mentioned agreement. On or about February 17th the defendant repudiated the said agreement and notified the plaintiff that the plans for the development of the project thereunder had been abandoned by the defendant and by the said Continental Guaranty Corporation. The plaintiff has never received the agreed compensation.

The complaint is undoubtedly based upon the theory that the plaintiff has a cause of action for damages caused by the breach of defendant's alleged warranty of authority to enter into a contract binding upon the corporation.

The contract was, it is alleged, made in August, 1921. The action was commenced by service of the summons on the 17th day of February, 1928. The defendant thereupon moved for an order dismissing the complaint on the ground that the cause of action did not accrue within the time limited by law for the commencement of the action. On the hearing of the motion, the plaintiff presented affidavits in accordance with the provisions of the Rules of Civil Practice, and the motion of the defendant has been denied.

The affidavits presented by the plaintiff, read with the complaint, sufficiently establish that the plaintiff believed that the defendant had authority to enter into the contract on behalf of the corporation, and that, in performing services under his contract, he acted in co-operation with the defendant, the president of the corporation. The defendant wrote to the plaintiff a letter dated February 17th, 1922, terminating the plaintiff's services, in which he stated: "We have made up our minds to drop the International Equipment Corporation as a separate enterprise, and if we use that Corporation at all it will be merely to clear merchandise transactions beyond our charter power." The letter was written on the corporate letter-head and was signed "E. S. Maddock, President." It was received a few days after its date and within six years of the bringing of this action. In March, 1923, the plaintiff brought an action against the corporation in Pennsylvania. The corporation filed an answer stating that the defendant Maddock had no authority to represent it or to enter into said contract in its behalf. Until that time the plaintiff had no knowledge or notice that defendant's representation of authority to act for the corporation was untrue.

The complaint contains no allegations of fraud. The action is not brought to procure a judgment on the ground of fraud. Section 48, subdivision 5, of the Civil

Practice Act has no application. An action for breach of warranty rests upon a contract which the law implies. The cause of action accrued when the wrong to the plaintiff was complete, not, as in an action for fraud, when the wrong was discovered. The cause of action is not upon the contract itself, made in the name of his principal, but upon the defendant's implied warranty or promise. (*New Georgia Nat. Bank* v. *Lippmann*, 249 N. Y. 307.) Breach of the implied promise or warranty of the defendant, rather than the repudiation or breach of the agreement which the defendant purported to make as agent of a corporate principal, should, on principle, fix the time when the plaintiff's cause of action against the defendant must be deemed to have accrued. We have found no judicial decision opposed to the principle.

The defendant maintains that since at the time when, as the plaintiff alleges, the defendant represented and warranted that he had authority to enter into a contract binding upon the corporation, the representation was false, the warranty was broken as soon as made and only when made. That does not follow. Before we can determine when a warranty or promise is broken, the terms of the warranty or promise must be formulated. The defendant did not, in fact, make any promise or warranty. No inference can be drawn from the allegations of the complaint or affidavits that he intended to make any promise or warranty. The only promise or warranty on the part of the defendant, alleged in the complaint, is implied by the law regardless of the defendant's actual intent. If the defendant attempted to make a contract on behalf of the corporation without authority, then according to a long line of judicial decisions, it is but just that the loss occasioned by there being no contract with the principal, should be borne by the agent who acted without authority. As a device by which that loss may be placed upon the agent, the courts have held that a promise or warranty must be implied. (*Baltzen*

v. *Nicolay*, 53 N. Y. 467; *Hall* v. *Lauderdale*, 46 N. Y. 70; *Halbot* v. *Lens*, [1901] 1 Ch. Div. 344.) The purpose for which the device of an implied promise has been created must dictate the terms of the promise when the courts are called upon to formulate it.

Sometimes the courts seem to have treated the implied promise as if it were one of indemnity for damages caused by reliance upon the assertion of authority. (*Bank of England* v. *Cutler*, [1908] 2 K. B. 208; *Anderson* v. *Adams*, 43 Ore. 621; *White* v. *Madison*, 26 N. Y. 117; *Taylor* v. *Nostrand*, 134 N. Y. 108; *Collen* v. *Wright*, 7 El. & B. 308; 8 El. & B. 647; *Starkey* v. *Bank of England*, [1903] A. C. 114, affg. *sub nom. Oliver* v. *Bank of England*, [1902] 1 Ch. Div. 610.) In these cases, it is true, the courts were called upon to determine the damages which might be recovered in an action for breach of warranty, rather than the time when the action accrued, and, in most cases, it may be said that the courts assumed, rather than determined, that the promise was one of indemnity, so that all damages which flowed naturally from continued reliance on the warranty of authority might be recovered. Perhaps, indeed, analysis might show that some of the decisions rest on other grounds. In *Sheffield Corp.* v. *Barclay* ([1905] A. C. 392), however, the court not only held that the implied contract was one of indemnity, but made that holding the basis of its decision that the Statute of Limitations begins to run only when the damages have actually been suffered.

In other cases, the courts have treated the implied warranty of authority as one which continued as long as the assertion of authority was acted upon. (*Yonge* v. *Toynbee*, [1910] 1 K. B. 215.) At times, indeed, the two theories of the nature of the promise or warranty coalesce; for a distinction between a promise of indemnity for damages caused by continued reliance on assertion of authority, and a warranty of authority which continues as long as it is relied on, has few if any practical consequences.

We do not from such decisions seek to formulate the promise which in all cases the courts of this State should hold is implied in law from the assertion of authority to bind a principal where such authority is, in fact, lacking. The doctrine of an implied warranty is based upon a fiction, and there is need of caution in determining the final consequences of a fiction. Much might be said both in favor of and against the various possible views of the nature of the warranty implied in law. These cases are of importance because they show a tendency in the courts to extend the implied promise till it gives protection against all damages which naturally flow from continued reliance upon the agent's assertion of authority. At present we give them no further effect. We confine our consideration to the facts in the particular case.

Here the defendant was the president of the corporation which he assumed to represent. The contract called for the performance of services by the plaintiff in cooperation with the defendant as president of the corporation. The defendant impliedly asked the plaintiff to sign the contract with the corporation in reliance upon the defendant's authority to bind the corporation. No less did the defendant ask the plaintiff to continue to rely upon his assertion of authority when, as president of the corporation, he cooperated with the plaintiff in the organization of the corporation. Finally, the corporation repudiated the contract, but in a letter which the defendant signed as president. There was no assertion, in that letter, that the defendant as president of the corporation had no authority to contract with the plaintiff for his services. On the contrary, it was calculated to disarm any possible suspicion that the defendant did not have such authority and, in effect, constituted a renewal of his assertion that he did have authority. Here decision that the defendant's assertion of authority was a continuing warranty rests upon no fiction but the actual intention of the parties as disclosed by their acts. We hold only that where a

person makes an assertion of authority to bind a principal, which is intended and understood to be a continuing assertion, the warranty of the truth of that assertion which the law implies must from its nature be a continuing warranty. The plaintiff's cause of action did not accrue till after he had received the letter signed by the defendant as president of the corporation. We do not attempt to indicate what would be our decision if the circumstances presented were different.

The order should be affirmed, with costs, and the questions certified answered as follows: The first and second questions in the negative and the third question in the affirmative.

Cardozo, Ch. J., Pound, Crane, Kellogg, O'Brien and Hubbs, JJ., concur.

Order affirmed, etc.